**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DELLA PAROLA CAPITAL MANAGEMENT, LLC, | |
| Plaintiff, | No. 21 CV 321 |
| v. | Judge Manish S. Shah |
| BLAZE PORTFOLIO SYSTEMS, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Della Parola Capital Management, LLC administered a hedge fund using software from Blaze Portfolio Systems, LLC. The software had a defect, resulting in trading and related losses. Della Parola sued Blaze in state court, alleging breach of contract, breach of express warranty, professional malpractice, fraud, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Blaze removed the case to federal court and moves to dismiss under Rule 12(b)(6). Della Parola moves to remand. For the reasons discussed below, the motion to remand is denied and the motion to dismiss is granted.

**I.    Legal Standards**

A defendant can remove a lawsuit filed in state court to federal court if the federal court has original jurisdiction over the dispute. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). When assessing whether diversity jurisdiction exists, ordinarily only the

citizenship of named parties is considered. *CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000) (citing *F. & H.R. Farman–Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 284 (7th Cir. 1989), *cert. denied*, 497 U.S. 1038 (1990)). Where "joinder of a nondiverse party would destroy subject matter jurisdiction," a district court must either deny joinder or permit joinder and remand the action to state court. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) (citing 28 U.S.C. § 1447(e); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir. 1996)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the claimant's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

## II. Background

Della Parola contracted with Blaze for software, agreeing to pay a one-time fee and annual charge in exchange for a license to Blaze's Atom Align platform. [1-1] ¶¶ 6–7; [25-1].[1] While their contract included a disclaimer of warranties, [25-1] at 5

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of the filings. The facts are taken from

§ 4.3, Blaze also promised that it would use "commercially reasonable efforts to provide ... Application Services" to Della Parola. [1-1] ¶¶ 7, 39; [25-1] at 5 § 4.2. Della Parola used Atom Align to receive account balances from its accounting provider, apply an appropriate account model, and generate accurate trade amounts for execution with a broker-dealer. [1-1] ¶¶ 11–12. The software was responsible for ensuring that account balances matched daily reconciliations from the portfolio accounting provider and that all assets were assigned the correct securities type. *Id*. ¶ 13. Della Parola used margin accounts and short sales[2] to manage its investments, including Black Bear Investment Fund, LLC, a hedge fund. *Id*. ¶ 2; [17] at 1.

Eighteen months after the parties entered their contract, Della Parola attempted to rebalance the Black Bear Investment Fund using Atom Align. [1-1] ¶¶ 6, 19. A flaw in Blaze's software resulted in an imbalance for the fund and a deficiency of $11,000,000. *Id*. ¶¶ 18–19. While Blaze marketed its software as capable of "Model Rebalancing" and having features "designed to ensure trading compliance and data accuracy," *id*. ¶ 9, the software was actually unable "to distinguish between a positive equity balance and a negative equity balance in a customer account," and therefore

---

the complaint, attachments to the complaint, and plaintiff's opposition to defendant's motion to dismiss. [1-1]; [25-1]; [17].

[2] A margin account "is a brokerage account in which the broker lends her client cash to purchase securities. The loan is collateralized by the client's securities or cash. If the value of the stock drops significantly, the account holder will be required to deposit more cash or sell a portion of the stock." *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 194 n.1 (1st Cir. 2007), *as amended* (Nov. 30, 2007). In a short sale, investors count on a drop in the price of securities in order to secure a profit. *See Am. Boat Co., LLC v. United States*, 583 F.3d 471, 475–76 n.3 (7th Cir. 2009) (citing *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 450 (5th Cir. 2008); *Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 820 (3d Cir. 1988)).

unable to accurately rebalance investments. *Id.* ¶ 14. Atom Align erroneously read margin account balances as positive rather than negative values. *Id.* ¶ 15. As a result of this design flaw, the Black Bear Investment Fund and Della Parola lost $3,015,179 in erroneous trades, and Della Parola lost all of its potential investors in the fund and related management fees. *Id.* ¶¶ 18–19, 56–57. Blaze acknowledged that it was aware of the flaw in Atom Align but had neither fixed the problem nor warned Della Parola. *Id.* ¶ 21. Blaze was aware that its software would ultimately fail and lead to erroneous trades. *Id.* ¶ 60. Della Parola relied on Blaze's representations and omissions and would not have entered into the contract had it known about the error in Atom Align. *Id.* ¶¶ 65–66.

Della Parola's sole member is Nardi Capitale, LLC. [1] ¶ 6. Nardi Capitale's members are David and Monica Mascio, who are both citizens of Florida. *Id.* The sole member of Blaze is AW Subsidiary, Inc., which is incorporated in Delaware and has its principal place of business in California. *Id.*

### III. Analysis

#### A. Motion to Remand

Blaze removed the case on the basis of diversity jurisdiction. [1] ¶ 5. Removal was proper because this case is between citizens of different states (between Della Parola, a citizen of Florida, and Blaze, a citizen of both Delaware and California), [1] ¶ 6, and because the amount in controversy exceeds the sum of $75,000. [1-1] ¶¶ 1, 18–19, 69; 28 U.S.C. §§ 1332, 1441.

Plaintiff's argument for remand anticipates issues that would arise if Black Bear Investment Fund, LLC were a party to this case. [18]. Because the fund is not a party to the case, however, these arguments and the motion to remand are premature. For purposes of removal jurisdiction, courts look at the case as of the time it was filed in state court. *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 390 (1998). Here, the removed complaint involved diverse citizens and this court has jurisdiction over the dispute. To destroy diversity jurisdiction and justify remand, Della Parola should have filed a motion to join under Federal Rule of Civil Procedure 19 or Rule 20 or a motion to amend the complaint under Rule 15(a)(2). If Della Parola had moved to join a nondiverse party, this court would have decided whether to deny or permit joinder pursuant to 28 U.S.C. § 1447(e). *See Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009). Plaintiff could still voluntarily dismiss this action and refile in state court. *See* Fed. R. Civ. P. 41(a)(1)(A)(i).

The motion to remand is denied.

**B.     Motion to Dismiss**

*1.     Breach of Contract and of Express Warranty*

Plaintiff's contract and express warranty claims are predicated on identical facts, so I consider Counts I and III together.

To state a claim for breach of contract a party must allege (1) the existence of a valid and enforceable contract; (2) a breach by the defendant; (3) substantial performance by the plaintiff; and (4) damages. *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2019) (citing *Dual-Temp of Illinois, Inc. v. Hench Control, Inc.*, 821

5

F.3d 866, 869 (7th Cir. 2016)). A breach of contract claim "requires an identifiable breach of a contract term." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614–615 (7th Cir. 2019). Contracts must be "construed as a whole," and if "the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Thompson v. Gordon*, 241 Ill.2d 428, 441 (2011) (citing *Gallagher v. Lenart*, 226 Ill.2d 208, 232 (2007); *Cent. Illinois Light Co. v. Home Ins. Co.*, 213 Ill.2d 141, 153 (2004)).

"In a breach of express warranty action under the [Illinois UCC], plaintiff must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill.App.3d 354, 360 (1st Dist. 2007) (quoting *Hasek v. DaimlerChrysler Corp.*, 319 Ill.App.3d 780, 788 (1st Dist. 2001)). Because warranties are creatures of contract, "the language of the warranty itself is what controls and dictates the obligations and rights" of the parties involved. *Id*. Disclaimers of express warranties can be enforceable. 810 ILCS 5/2-316.

At issue here is the meaning of an express warranty provision. Della Parola claims that Blaze violated section 4.2 of their contract, where Blaze "warrants that it will use commercially reasonable efforts to provide the Application Services to Customer" provided that certain conditions are met. [1-1] ¶¶ 7, 23; [25-1] at 5 § 4.2. According to Della Parola, that provision required Blaze to "provide [plaintiff] with a software platform that performed in a commercially reasonable fashion or in conformity with commercially reasonable norms and standards." [1-1] ¶ 23; [17] at 4.

The claimed breach, then, was that it was commercially unreasonable that Atom Align could not rebalance accounts. [17] at 4–5. Blaze argues that it warranted only to use commercially reasonable methods to deliver its software and that no provision in the contract required that Atom Align perform in a commercially reasonable way. [12] at 12–13.[3]

Section 4.2 of the contract required Blaze to "use commercially reasonable efforts to provide the Application Services" to plaintiff. [25-1] at 5 § 4.2. Elsewhere in the contract, "Application Services" are defined as "the products and services identified in the Subscription Schedule." *Id*. at 1 § 1.2. On the contract's Subscription Schedule, under "Description of Application Services" are the words "Atom Align," the name of Blaze's software platform. *Id*. at 10. Reading section 4.2 of the contract in context, then, Blaze warranted to use commercially reasonable efforts to *provide* application services—its software—to Della Parola. On this point, the contract is unambiguous, *see Thomas*, 241 Ill.2d at 441 (words in a contract that are clear and

---

[3] Blaze makes a general argument that plaintiff has failed to adequately allege damages for any of its claims. [12] at 10–11. Defendant points out that Della Parola has alleged trading-loss damages apparently suffered by a non-party: Black Bear Investment Fund, LLC. *Id*. Della Parola concedes that Black Bear suffered losses. [18] ¶¶ 4–5. Nevertheless, I must accept as true the facts pled in the complaint and the complaint at times alleges that it was Della Parola that suffered trading losses, [1-1] ¶ 24, and that satisfies the pleading requirements for those claims that fall under Rule 8. Blaze also argues that plaintiff's lost profits are unrecoverable based on a limitation of liability provision in the contract. [12] at 11–12; [25-1] at 7 § 9.1. But the contract bars the recovery of lost profits only when they are "incidental, special, punitive, indirect or consequential," not when lost profits are direct damages. [25-1] at 7 § 9.1; *see Aculocity, LLC v. Force Mktg. Holdings, LLC*, No. 17-CV-2868, 2019 WL 764040, at *2–3 (N.D. Ill. Feb. 21, 2019) (interpreting a similar contractual provision); *Westlake Fin. Grp., Inc., v. CDH-Delnor Health Sys.*, 389 Ill.Dec. 140, 148–49 (2d Dist. 2015) (same). Whether Della Parola's lost profits are direct turns on how foreseeable they were, but that determination is premature at this stage, and so the allegation of lost profits also satisfies the requirements of Rule 8.

unambiguous are not susceptible to more than one meaning), and Defendant nowhere promised or warranted that its product would *perform* in a commercially reasonable way. [25-1]. Plaintiff has failed to identify any promise that Blaze has breached and without that, its warranty and contract claims fail.[4]

Counts I and III are dismissed.

    2.    *Fraud*

Count II alleges consumer fraud and unfair practices under the Illinois Consumer Fraud Act. Count VI is a claim for common law fraud.

The Consumer Fraud Act prohibits "unfair or deceptive acts or practices ... in the conduct of any trade or commerce." 815 ILCS 505/2. Deceptive or unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact." *Id*. To state a claim under the Act, a plaintiff must show "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934–35 (7th Cir. 2010)).

The elements of common law fraud are "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that

---

[4] The parties debate the significance of section 4.3 of the contract, a disclaimer of additional warranties. *See* [25-1] at 5 § 4.3; [12] at 13; [17] at 6. I do not reach that argument, however, because plaintiff has not alleged a breach of any warranty except that found in section 4.2. [1-1]. Similarly, plaintiff argues that where contractual provisions conflict, the more specific controls. [17] at 5 (citing *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020); *Coe v. BDO Seidman, L.L.P.*, 396 Ill.Dec. 740 (1st Dist. 2015)). But in this contract, sections 4.2 and 4.3 do not conflict, and so these cases are not on point.

8

the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 496 (1996); *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Under either the Consumer Fraud Act or a common law theory, a plaintiff alleging fraud must meet the heightened pleading standards of Rule 9(b). *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

In a contractual setting, a plaintiff pleading fraud must show more than "the mere fact that a defendant promised something and then failed to do it." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 169 (2005) (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill.App.3d 308, 312 (2d Dist. 2000)); *Greenberger*, 631 F.3d at 399. In other words, "a breach of contractual promise, without more, is not actionable" either under the Consumer Fraud Act, *Avery*, 216 Ill.2d at 169, or under a theory of common law fraud. *See Greenberger*, 631 F.3d at 401. The plaintiff must prove that the defendant engaged in fraudulent acts or practices distinct from any underlying breach of contract. *Id.* at 399 (citing *Avery*, 296 Ill.2d at 100).

Blaze argues that plaintiff's Consumer Fraud Act claim is merely a reformulation of its contract claim, Della Parola has not adequately alleged deception, and plaintiff has failed to plead its common law fraud claim with particularity. [12] at 14–17, 20–21. Della Parola responds by saying its fraud claims rest on a theory of fraudulent concealment or omission. Unlike its contract claims (based on a promise

9

to provide commercially reasonable software), its fraud claims are about Blaze's efforts to conceal a defect in the program.[5]

Della Parola is correct that the Consumer Fraud Act should be "liberally construed to effect is purpose." *Avery*, 216 Ill.2d at 192. But the Illinois Supreme Court has nonetheless imposed an important limit on fraud claims: they must not be predicated on a mere breach of contract. *Id.* at 168–70. This prohibition on overlapping contract and fraud claims applies to both statutory and common law claims, *see Greenberger*, 631 F.3d at 401, and it applies here. Della Parola's claims fail because plaintiff has not alleged fraud separate from the alleged breach of contract.

Both Della Parola's statutory and common law claims turn on the underlying contract. Blaze's allegedly fraudulent acts—its representations about the rebalancing function, omissions about the software's defect, and act of licensing a flawed product—were all made in the course of a contractual relationship. While Della Parola attempts to distinguish its contract and fraud claims, they rest on identical facts: an agreement to provide software that went awry. Plaintiff's fraud claims are premised on the language of the agreement, duplicate its contract claims, and cannot

---

[5] Della Parola claims that Blaze's conduct was both unfair and deceptive. [1-1] at 32–33. But the complaint sounds in deception, not unfairness. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738–39 (7th Cir. 2019) (quoting *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014)) ("To determine whether a practice is unfair, Illinois courts consider three factors: whether it 'offends public policy'; is 'immoral, unethical, oppressive, or unscrupulous'; or 'causes substantial injury to consumers.'"). Plaintiff has not identified any relevant public policy that Blaze's conduct offended or shown that it had no choice but to submit. Della Parola could have avoided the injury in question by contracting specifically for a software that met its requirements. *See Bat*son, 746 F.3d at 830–34 (7th Cir. 2014). Della Parola has failed to allege unfair conduct under the Consumer Fraud Act.

support a fraud action. *See Greenberger*, 631 F.3d at 399 (dismissing fraud claims where a plaintiff's fraud and contract claims "rest on the same factual foundation").[6]

Counts II and VI are dismissed.

### 3. *Intentional Interference with Prospective Economic Advantage*

To state a claim under Illinois law for intentional interference with prospective economic advantage, a plaintiff must allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.'" *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015) (quoting *Voyles v. Sandia Mortg. Co.,* 196 Ill.2d 288 (2001)). A plaintiff must allege that an interferer took actions "directed at third-party business prospects," intending to injure plaintiff's expectancies. *F:A J Kikson v. Underwriters Lab'ys, Inc.*, 492 F.3d 794, 800 (7th Cir. 2007) (citing *Galinski v. Kessler*,

---

[6] Even if Della Parola had identified fraud distinct from its contract claims, its allegations could not survive scrutiny under Rule 9. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (citing *Windy City Metal Fabricators & Supply, Inc., v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008)) ("We have summarized the particularity requirement [under Rule 9 for fraud claims] as calling for the first paragraph of any newspaper story: 'the who, what, when, where, and how.'"). Plaintiff has alleged some information about the circumstances of the fraud. The when is August 2018 and after—at the signing of the contract and during the duration of the contractual relationship, the period when the fraudulent misrepresentations or omissions were made. [1-1] ¶¶ 6–7, 32–35, 61–69. The what includes the contract itself (including section 4.2) and Blaze's silence about the flaw in Atom Align during the course of the contract. *Id*. But section 4.2 does not mean what Della Parola claims it did and cannot support a fraud claim. Outside section 4.2, plaintiff has not pointed to any particular deceptive conduct by Blaze that plaintiff saw and that caused plaintiff harm.

11

134 Ill.App.3d 602 (1st Dist. 1985); *Crinkley v. Dow Jones & Co.*, 67 Ill.App.3d 869 (1st Dist. 1978); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 298 (7th Cir. 1981)).

Della Parola argues that because Blaze was aware of plaintiff's expectation that its new hedge fund would attract significant investment, defendant's conduct was directed at plaintiff's prospective customers. [17] at 13. But Della Parola never points to contact—direct or indirect—between Blaze and plaintiff's potential investors. *See* [1-1] ¶¶ 50–58; [17] at 13–14. That Blaze knew plaintiff had hopes of future investment with the fund and nonetheless licensed its flawed software to Della Parola is not an action directed at third-party business prospects. *See F:A J Kikson*, 492 F.3d at 800–01 (finding no directed actions where a defendant made direct contacts with plaintiff's business prospects but had not taken actions "designed to induce customers not to buy [plaintiff's product]"); *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 686–87 (7th Cir. 2014) (affirming dismissal of a tortious interference claim where a defendant did not communicate with a third party); *Galinski v. Kessler*, 134 Ill.App.3d 602, 607–08 (1st Dist. 1985) (rejecting a tortious interference claim where "the interfering conduct complained of is directed towards the plaintiff as opposed to a third party"). Plaintiff has also failed to allege that Blaze acted with the purpose of injuring plaintiff's expectancies. *See F:A J Kikson*, 492 F.3d at 800–01. Della Parola claims that Blaze acted "with malice and with the intent that Della Parola suffer monetary damages," [1-1] ¶ 58, but this conclusory statement is unsupported by any factual allegations. Plaintiff has not shown that Blaze took

actions directed at third parties with the purpose of injuring plaintiff's expectancies, and the complaint does not support an intentional interference claim.

Count V is dismissed.

####  4.    *Professional Malpractice*

To bring a claim in tort for professional malpractice or negligence, a plaintiff must show "(1) the existence of a professional relationship, (2) a breach of duty arising from that relationship, (3) causation, and (4) damages." *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja*, LLC, 364 Ill.App.3d 6 (1st Dist. 2006) (citing *Belden v. Emmerman*, 203 Ill.App.3d 265, 268 (1st Dist. 1990)). Where a plaintiff seeks to recover for "solely economic loss," Illinois law bars tort remedies in most situations. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 88 (1982). In other words, "[c]ontract law applies to voluntary obligations freely entered into between parties," while tort law "applies in situations where society recognizes a duty to exist wholly apart from any contractual undertaking." *Collins v. Reynard*, 154 Ill.2d 48, 51 (1992).

Plaintiff admits that Illinois has not recognized a duty of care owed by software designers to the users of their products, but nonetheless asks this court to extend Illinois law and recognize such an obligation. [17] at 11. Because I must take state law as I find it and cannot predict novel developments, plaintiff's claim fails. *See Knight v. Enbridge Pipelines (FSP) L.L.C.*, 759 F.3d 675, 677–78 (7th Cir. 2014); *Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 379 (7th Cir. 2010). Blaze owed Della Parola no extracontractual duty of care, and Della Parola's remedy for its solely economic loss is in contract, not in tort. *See Congregation of the Passion, Holy*

*Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 161–62 (1994) (Illinois recognizes extracontractual duties on the basis of traditional responsibilities owed by certain professionals).[7]

Count IV is dismissed.

## IV. Conclusion

Plaintiff's motion to remand, [18], is denied. Defendant's motion to dismiss, [11], is granted. Because a plaintiff should be given at least one opportunity to try to amend, the dismissal of the complaint is without prejudice. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). Plaintiff has permission to file an amended complaint by September 9, 2021. If no amended complaint or notice of voluntary dismissal is filed, the complaint will be dismissed with prejudice and the clerk will enter judgment.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: August 19, 2021

---

[7] Plaintiff also argues that it pled negligent representation in Count IV, rather than professional malpractice. [17] at 12. That's not what its complaint says, and "a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (citing *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007)).